Sullivan,
March 6, 1923.

CARRIE B. BARTLETT, *Ex'x, v.* EMMA J. MCKAY, *Ap't.*

To justify the disallowance of a will on the ground of undue influence, it must be established that the influence charged amounts to fraud or coercion, destroying free agency, and is not merely the influence of kindness or affection; nor is undue influence established merely by evidence of opportunity and ability to influence the testator or even by suggestion or request, in the absence of evidence of fraud or imposition or coercion so strong as to substitute another's will for that of the testator.

PROBATE APPEAL, from the allowance of the will of Harriet L. Blood. The issue of undue influence was tried by the jury with verdict for the defendant. The plaintiff's motion for a directed verdict was denied subject to exception and transferred by *Marble*, J., from the May term, 1922, of the superior court. The facts are stated in the opinion.

*Hurd & Kinney* and *Bernard W. Carey* (*Mr. Hurd* orally), for the plaintiff.

*Jesse M. Barton* (by brief and orally), for the defendant.

PARSONS, C. J. The plaintiff having proved the due execution of the will by a testatrix whose competency is not questioned was entitled to a decree establishing the will unless evidence was offered from which some fact invalidating the will as matter of law could reasonably be found. *Albee* v. *Osgood*, 79 N. H. 89, 93.

The will was executed January 3, 1913, nearly eight years before the testatrix's death, August 22, 1921. Her competency to make a will is not attacked. The evidence tends to show strength rather than weakness of mind. The issue of fraud was taken from the jury without exception. The executrix and principal legatee under the will who is accused of exercising undue influence to secure it was not present at the drafting or execution of the will. There is no evidence connecting her with it in any way. To justify the disallowance of a will on the ground of undue influence, there must be evidence sufficient to permit the inference that the testator was misled or coerced into making the will as it was made; it must appear that the influence charged amounts "to force and coercion, destroying free agency, and not merely the influence of affection, or merely the desire of gratifying another; but it must appear that the will

was obtained by this coercion." *Albee* v. *Osgood, supra,* 89, 92, 94. "Undue influence to avoid a will must be of a kind that subjugates. the mind of the testator to that of the person seeking to control it, so as to destroy the free agency of the testator at the time the will is made." *McNitt's Estate,* 229 Pa. St. 71. "Influence gained by kindness and affection will not be regarded as 'undue' if no imposition or fraud be practiced, even though it induce the testator to make an unequal and unjust disposition of his property." *Note* to *Small* v. *Small,* 4 Greenleaf 220, in 16 Am. Dec. *p.* 259; *Mackall* v. *Mackall,* 135 U. S. *p.* 172. Opportunity and ability to exercise control are not of themselves sufficient evidence to establish undue influence. The question remains, was there evidence tending to show the successful exercise of such control? *Loveren* v. *Eaton, ante,* 62. In the absence of any evidence of incompetency or weakness of mind or of any fraud or imposition or of any control at the execution of the will or of any action whatever by the party charged in relation to its making, it is doubtful if a case will ever arise presenting evidence which will authorize avoiding the will on the ground of undue influence. The only considerations left are the provisions of the will taking into consideration all the evidence as to the situation and relationship of the parties. *Loveren* v. *Eaton, supra.* The testatrix had three children. She gave $100 each to two of her children and the balance of her estate, some $4500 in all, to the other child, the daughter who is charged with exercising undue influence to secure the will in her favor. There is no evidence as to the pecuniary condition of either child as tending to show why either would or would not be likely to be preferred.

Prior to September, 1912, the testatrix and her husband, Moody Blood, lived on a small farm near the village of Newport. The three children were married; two, the executrix and brother, lived in Newport, while the contestant was settled with her husband in Worcester. Moody Blood died September 3, 1912, leaving a will of which the testatrix Harriet was the executrix, which gave her all the property except minor gifts to children and grandchildren. Shortly before his death, he conveyed the farm upon which he and the testatrix lived to Burton F. Bartlett, the husband of the executrix, for a monetary consideration which was subsequently paid and the agreement, as the Bartletts claimed, that Blood and his wife should have a home on the farm as long as they lived. Blood was then on his death-bed. After his death the Bartletts moved to the farm and the testatrix lived there with them until her death August.

22, 1921. The contestant Emma McKay and her brother were very much offended by this sale of the farm, so much so that they refused to accept for themselves or their children, from Mrs. Blood as executrix, the bequests made for them in Moody's will. The evidence in the case relates mainly to the good faith of the transaction as to the farm.

Shortly after Moody's death Mrs. Blood made a will in which she left to Will and Emma $500 each, which by the will in proof she reduced to $100 each, giving to the scrivener as a reason their conduct in relation to their father's conveyance of the farm. There was no evidence Moody left any property except the purchase price of the farm and some live stock and farming tools, or that the testatrix had any except what she received under her husband's will. Her estate was appraised at $4,506.88. The evidence relied upon to show undue influence consists of testimony as to statements made by Mrs. Blood soon after her husband's death, that Emma should not feel the way she did; that everything would be divided and divided equally when she died; and on another occasion after the will was made that "if she could have her way she would like her children to have a good sum of money, what belonged to them but of course she hadn't got her way, it would have to go as it was; she couldn't have her way," there was evidence that the testatrix's relations were more cordial and affectionate with Carrie than with the other children and that Carrie influenced her mother when with her, there was also evidence of statements by the testatrix shortly before her death that she had made no will which, however the evidence may be explained, are immaterial on the validity of a will made eight years before, whose execution is conclusively proved and not denied. The most that can be said of this evidence is that it has some tendency to establish opportunity and ability to influence the testatrix, but it falls far short of authorizing the inference that the will Mrs. Blood made was not her will.

If her statement at the time of her husband's death was intended to promote peace in the family, it had no such effect; the daughters never spoke to each other and the contestant's letters to her mother attacking her father may well have induced the mother, as she stated to the scrivener, in dividing the father's estate in her hands to diminish the daughter's share.

The provisions of the will are not unreasonable. The testatrix had the right to prefer one of the children. That she was induced to do so by superior affection for or more intimate association with

that one, or even by her suggestion or request, does not affect the will in the absence of evidence of fraud or imposition or coercion so strong as to substitute the daughter's will for the mother's. There is no evidence of fraud or imposition and no substantial evidence that the daughter's influence was wrongfully exercised to produce the will. The issue of undue influence should not have been submitted.

*Exception sustained: decree of probate court affirmed.*

YOUNG, J., was absent: the others concurred.