Hillsborough, }
June 7, 1932. }

LEON C. BERRY & a., *Adm'rs*, & a.

*v.*

MARY E. MERRILL, & a.

*Devine & Tobin* (*Mr. Tobin* orally), for the plaintiffs.

*John O'Neill* and *Wyman, Starr, Booth & Wadleigh* (*Mr. Wyman* orally), for the defendants.

BRANCH, J. The defendants argue that the plaintiffs' exceptions present no question of law for decision here because "the granting of defendants' motion presupposes that the trial court decided as a fact upon the evidence in the case that his equity conscience was not convinced by the verdict of the jury and that upon the evidence the defendants were entitled to have the bill dismissed."

This position is not well taken. In this jurisdiction the trial judge can no more disregard the verdict of a jury in an equity case than in an action at law. "There is no distinction between suits at law and in equity in this respect." *Free* v. *Buckingham*, 59 N. H. 219, 223. "In both courts, [of law and equity] the aid of a jury is sought, because it is supposed to be best fitted to decide upon controverted questions of fact, and no reason is perceived for regarding the trial by jury as less sacred in one court than the other." *Clark* v. *Society*, 45 N. H. 331, 336. The rules which govern the court on applications to set aside verdicts at law should also be applied in suits in equity. *Free* v. *Buckingham, supra; Bell* v. *Woodward*, 48 N. H. 437, 442; *Clark* v. *Society, supra; State* v. *Harrington*, 69 N. H. 496. It therefore follows that the order dismissing the bill cannot be sustained if there was any evidence to justify the finding of the jury upon the issue of undue influence.

An examination of the record, however, discloses no such evidence. Two of the deeds in question consisted of a conveyance of certain real estate in Manchester by the deceased to the defendants and a mortgage back from them conditioned upon their supporting him for the remainder of his life. The decedent was a chiropractor. He had been three times married and divorced. The plaintiffs are all his children by his second marriage. He met the defendant Mary E. Merrill first as a patient. Subsequently he employed her to do housework by the day, and eventually both of the defendants went to live at his house. Mr. Merrill acted as chauffeur and man of all work, and Mrs. Merrill prepared the meals and did the housework. Until her death in 1925, the decedent's mother was also a member of the household and Mrs. Merrill assisted in caring for her when occasion arose. For a portion of the time the decedent's daughter, Marjorie, one of the plaintiffs, also resided with him. The relations between Dr. Berry and Mrs. Merrill were described as "very loving" but there was no basis for any finding that they were criminal and no such suggestion is made in plaintiffs' argument.

As evidence that the defendants were able to influence the deceased, the plaintiffs call attention to the following facts. 1. That when

Dr. Berry's mother died the funeral was held, as the result of a suggestion from Mrs. Merrill, in the rooms of the undertaker rather than at the Berry home. 2. That soon after the grandmother's death, Marjorie Berry left and went to live with her mother in Laconia. 3. That Dr. Berry failed to take his son, the plaintiff Clyde F. Berry, into partnership with him in 1926, as he had previously planned to do. 4. That although the doctor's second wife, Mrs. Hoyt, returned to keep house for him in 1926 when Mrs. Merrill was forced to leave on account of the illness of her mother, he took Mrs. Merrill back after her mother's death and sent Mrs. Hoyt away.

The plaintiffs concede that "it was impossible to definitely prove just what part Mrs. Merrill played in sending Marjorie away" and that "there is no direct evidence as to the reason for the Doctor's change of heart toward Clyde," but they assert "it cannot reasonably be argued that all these situations would have arisen had not Mrs. Merrill been involved." It is said that these circumstances indicated "not only an opportunity and an ability to influence but an actual design to dominate the decedent."

The premises of this argument hardly justify its final conclusion, but even if the conclusion be accepted, it still falls far short of establishing the necessary fact that the conveyances in question were in reality the product of undue influence. Undue influence, as here understood, means an influence which amounts to "force and coercion, destroying free agency, and not merely the influence of affection, or merely the desire of gratifying another; ... Influence gained by kindness and affection will not be regarded as 'undue' if no imposition or fraud be practiced, even though it induce the testator to make an unequal and unjust disposition of his property. ... Opportunity and ability to exercise control are not of themselves sufficient evidence to establish undue influence." *Bartlett* v. *McKay*, 80 N. H. 574; *Albee* v. *Osgood*, 79 N. H. 89, 92.

The conveyances in question were prepared for the deceased in the office of a lawyer of his own choosing and the defendants were not present when they were drawn up. There is no evidence of importunity or of pressure exerted upon him by the defendants. It is evident that the decedent was fond of them and it may be assumed that they had some influence with him, but we are unable to find in the evidence any basis for a finding that they abused their power.

The plaintiffs place reliance upon certain declarations of the decedent, but in so doing they fail to observe the limitations under which these declarations were admitted in evidence. There was testi-

mony to the effect that in July, 1926, Dr. Berry stated that "he didn't know what he was going to do; that they were trying to get his property away from him" and at a later date he was reported to have said, "I have lost everything. The people in this house have got everything I have got." It appears from the record that these declarations were admitted solely as bearing upon the mental capacity of the decedent. Their admissibility even for this limited purpose is doubtful, but if they had any tendency to show lack of mental capacity, they might be regarded in the same way as evidence of susceptibility to undue influence. With reference to the conduct of the defendants, however, they were pure hearsay and inadmissible for the purpose of establishing the facts asserted therein. Having been introduced for a limited purpose, no finding that the conveyances in question were the product of undue influence could be based on this evidence alone. *Bartlett v. McKay, supra,* 576.

Since the mental capacity of the decedent was established, and since there was no evidence to sustain the finding of undue influence, the orders of the court setting aside the verdict and dismissing the bill were correct.

*Exceptions overruled.*

PEASLEE, C. J., was absent: the others concurred.