**In re TEXAS A & M–CORPUS CHRISTI FOUNDATION, INC.**

No. 13–02–262–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 8, 2002.

Andrew M. Greenwell, James R. Harris, Harris & Greenwell, Corpus Christi, for Relator.

Catherine D. Tobin, Rudy Gonzales, Jr., Chaves, Gonzales & Hoblit, Corpus Christi, Philip H. Hilder, Hilder & Associates, Houston, for Real Party.

Before Chief Justice VALDEZ and Justices DORSEY and RODRIGUEZ.

## OPINION

Opinion by Justice DORSEY.

The opinion issued by this Court on June 7, 2002, is hereby withdrawn and the following is substituted in its place.

Relator, Texas A & M–Corpus Christi Foundation, Inc., seeks mandamus relief from an order issued by the 214th Judicial District Court of Nueces County, Texas, that denied the Foundation's motion to compel discovery.

This case involves a challenge to a gift of $2 million made by Mrs. Frances K. Snyder to the Foundation. The administrator for Snyder's estate brought suit against the Foundation and the President of Texas A & M University—Corpus Christi, Robert Furgason, contending that Furgason wrongfully induced Mrs. Snyder to make the gift to the Foundation.[1]

The issues in that suit seem to have been distilled to the question of whether Mrs. Snyder possessed the mental capacity required to effectuate the transfers at issue. The $2 million gift was made by Mrs. Snyder in November 1999. The challenged discovery sought in this mandamus action is information from two attorneys who worked with Mrs. Snyder on estate and trust matters prior to the actual *inter vivos* gift at issue here. The foundation seeks discovery from two lawyers: Henry Nuss and Richard Leshin. Nuss worked with Mrs. Snyder on a gift transaction she sought to make to the university the year before the *inter vivos* gift. In fact, in his deposition, Nuss stated that it was his "understanding that the gift [at issue] occurred after [his] representation work had ended, although [it was] based on documents to a large extent that [he] had prepared." While Nuss was not directly involved with the actual gift transaction that Mrs. Snyder finally made to the foundation, he was involved in assisting Mrs. Snyder with the original idea of giving a large endowment to the university and in drafting a large part of the paperwork that was actually used to effectuate the gift. He testified in his deposition that with regard to the actual gift that was made, he knew the university was using documents he had previously prepared and that he communicated with the university "with respect to the gift that ... Ms. Snyder wanted to make...." Nuss testified that documents he was presented with at his deposition dating from January of 1998 to November of 1999 included documents generated by him, documents copied from documents generated by him, and documents that did not appear to have been

---

1. The Real Party in Interest is referred to as "the estate" for purposes of clarity. In each instance, the term refers to "Bryan Lee Holmes, as Independent Administrator of the Estate of Frances K. Snyder, Deceased, and as Trustee of the Frances K. Snyder Trust."

generated by him. He described all these documents as "a series of documents that existed between that time that were variations and that would represent some of the coordination [between himself and the persons preparing the *inter vivos* gift transaction] and some of Mrs. Snyder's thinking during that period of time as well."

The other discovery sought is information from attorney Richard Leshin. Leshin represented Mrs. Snyder in estate related matters rather extensively in years prior to the gift at issue in this case, and worked with Nuss some in the aforementioned transaction. Leshin testified at deposition that he represented Mrs. Snyder in various estate and trust-related matters during the mid to late '90's. Also, he actually signed some of the documents that effectuated the actual *inter vivos* gift made the subject of this suit. When directly asked whether he played any role in the gift, he stated that he "executed some of the documents to effectuate the gift, but [he] did not have any contact with Mrs. Snyder in the gifting."

When the Foundation attempted to depose Nuss and Leshin, the estate asserted the attorney-client privilege as a shield against the Foundation's discovery of communications between Mrs. Snyder and those attorneys. Leshin and Nuss asserted the attorney-client and/or work product privileges to shield them from being forced to disclose material and information that would normally be protected under those privileges. The Foundation brought a motion seeking the trial court to compel the estate to produce the discovery requested.

The Foundation argued that, first, the discovery sought is not shielded by the attorney-client privilege, and, second, even if it were, the estate is prohibited from asserting the privilege in such an "offensive use." [2] When the trial court signed an order denying its motion to compel, the Foundation sought mandamus relief from this Court. We conditionally grant mandamus because we find that the discovery sought by the Foundation is not protected by the attorney-client privilege. Accordingly, the trial court abused its discretion in refusing to compel the estate to produce the discovery requested.

 The estate contends, first, that mandamus relief is not available in this case because remedy by direct appeal is adequate. While we certainly agree with the principle that mandamus may only issue where there is no adequate remedy by appeal, *Walker v. Packer,* 827 S.W.2d 833, 842 (Tex.1992), we disagree with the estate's contention that remedy by direct appeal is adequate. "[A] denial of discovery going to the heart of a party's case may render the appellate remedy inadequate." *Id.* at 843. The discovery sought here relates to Mrs. Snyder's longstanding intentions to make a gift to the foundation and her mental acumen shortly before her gift was actually made. This is evidence that is relevant to evaluating her mental capacity at the actual time of the transfer. We hold this information sufficiently relevant so as to make mandamus relief an appropriate remedy. Appeal is not a sufficient remedy, because absent the discovery the case will have been tried needlessly.

 Having found mandamus available, we now turn to the question of whether

---

**2.** The Texas Supreme Court set forth the offensive use doctrine in *Republic Ins. Co. v. Davis,* 856 S.W.2d 158, 163 (Tex.1993). Because we find that straightforward application of the rule of privilege shows that the discovery sought is not privileged, we do not inquire into whether the estate has met the requisites for application of the offensive use doctrine.

the trial court clearly abused its discretion in denying the Foundation's motion to compel. In addition to showing that the remedy of direct appeal is inadequate, a party seeking mandamus relief must also show that the trial court clearly abused its discretion. *Id.* at 839. When applying the law, the trial court has little discretion. *Id.* Thus, if a trial court applied the law incorrectly, an abuse of discretion will be found. *Id.* We find that to be the case here.

Straightforward application of the rule of evidence regarding attorney-client communications shows that the information the Foundation seeks to discover is not covered by the privilege, but rather, is specifically excepted by rule 503(d)(3). *See* Tex.R. Evid. 503(d)(3).

■ In general, communications between attorneys and their clients are privileged. *See id.* at 503(b)(1). The privilege may be claimed by the personal representative of a deceased client. *Id.* at 503(c). However, the rule has some exceptions that take attorney-client communications out of the scope of the privilege. Specifically, the rule states: "There is no privilege under this rule ... [a]s to a communication relevant to an issue between parties who claim through the same deceased client, regardless of whether the claims are by testate or intestate succession or by *inter vivos* transactions...." *Id.* at 503(d)(2). We have found no cases construing the parameters of this exception.

Thus, we simply apply the plain meaning of the rule to the case at bar. Because the discovery material sought by the Foundation is "relevant to an issue between parties who claim through the same deceased client," we hold that it is outside the scope of the attorney-client privilege. Because the trial court denied the Foundation's motion seeking compulsion of this discovery, it abused its discretion. Accordingly, we conditionally grant mandamus and direct the trial court to vacate its order denying the Foundation's motion to compel, and instead, enter an appropriate order in accordance with this opinion.