6th Circuit Court — Concord Probate Division
No. 2012-555

### PETITION OF STEPHEN STOMPOR

Argued: September 19, 2013
Opinion Issued: December 6, 2013

*Roy S. McCandless, Esq., P.L.L.C.*, of Concord (*Roy S. McCandless* on the brief and orally), for Stephen Stompor.

*Seufert, Davis & Hunt, PLLC*, of Franklin (*Christopher J. Seufert* on the brief and orally), for Stan Stompor.

CONBOY, J. The petitioner, Stephen Stompor, seeks a writ of certiorari, *see* SUP. CT. R. 11, challenging an order of the 6th Circuit Court — Concord Probate Division (*Hampe*, J.) granting the petitioner and his brother, the respondent, Stan Stompor, access to the file of an attorney who drafted estate plan documents for their parents, Broneslaw and Amelia Stompor (the parents). We affirm.

The following facts are drawn from the record. In 2001 and 2002, the parents met with an attorney (the Attorney) regarding their estate plans. The Attorney drafted estate plan documents for them; however, due to a conflict, the Attorney subsequently withdrew from representing them, and the estate plan documents were not executed.

In 2004, the petitioner wrote to the Attorney to inquire whether the Attorney would again represent the parents with regard to their estate plans. The Attorney declined to do so. The petitioner then helped the parents prepare certain estate plan documents, and the parents executed those documents in October 2004. Although these estate plan documents are not included in the record on appeal, the petitioner represents, and the respondent does not dispute, that they include wills that bequeath the parents' assets to the petitioner and his family to the exclusion of the parents' other children. The documents include the Broneslaw J. Stompor Living Trust, of which the petitioner is a co-trustee. That same year, the parents also gave the petitioner powers of attorney to act as their agent.

In October 2007, the respondent filed a petition in the probate division, on the parents' behalf, pursuant to RSA 506:7 (2010), seeking to determine the legality of certain acts of the petitioner and requesting, among other things, an accounting of the petitioner's handling of all of the parents' funds either personally or as a trustee of his father's living trust. In June 2009, the respondent successfully moved to amend his petition to allege that, in 2004, the petitioner, as the parents' fiduciary, exercised undue influence over the parents when they lacked the capacity to understand the estate plan documents that gave the petitioner and his family exclusive inheritance rights to the parents' assets to the exclusion of the parents' other children. The respondent sought to have the petitioner removed as the parents' fiduciary and to void all actions taken in his fiduciary capacity. The parents passed away during the late summer of 2009.

In February 2010, while his petition was still pending, the respondent sought disclosure from the Attorney of any information he had regarding his contact with the parents in connection with the challenged 2004 estate plan. The petitioner objected, arguing that the attorney-client privilege prohibits disclosure of any documents the Attorney has relating to his consultations with the parents. Thereafter, the court granted the parties' assented-to discovery motion allowing the Attorney to submit, for *in camera* review, any files he had "concerning [the parents'] estate plan[] documents signed in 2004." The court reviewed the file and held a hearing. At the December 1, 2011 hearing, the Attorney appeared and objected to disclosure of his file on the ground that, with the possible exception of the 2004 letter from the petitioner, its contents are subject to the attorney-client privilege.

Subsequently, the court issued an order allowing disclosure of the Attorney's file to the parties. The court ruled that, pursuant to *Stevens v. Thurston*, 112 N.H. 118 (1972), the Attorney's entire file was discoverable because it was relevant to a dispute among the decedents' children and to whether the petitioner unduly influenced the parents' decisions regarding their estate plan. After being denied an interlocutory appeal, the petitioner filed this petition for writ of certiorari challenging the trial court's ruling. We accepted the petition and stayed the court's disclosure order pending resolution of this proceeding.

The petitioner argues that the attorney-client evidentiary privilege prohibits disclosure of the Attorney's file and that no exceptions to the privilege apply. He further contends that this case does not involve an at-issue waiver or a compelling need that would allow for disclosure of the Attorney's file. The petitioner also argues that his 2004 correspondence with the Attorney is protected by the attorney-client privilege because he wrote to the Attorney on the parents' behalf. Finally, the petitioner maintains that the trial court erred because the Attorney's file is not responsive to the discovery order.

We review a trial court's decisions on the management of discovery and the admissibility of evidence under an unsustainable exercise of discretion standard. *Desclos v. S. N.H. Med. Ctr.*, 153 N.H. 607, 610 (2006). We will not disturb the trial court's order absent an unsustainable exercise of discretion. *Id.* To meet this standard, the petitioner must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. *See id.*

■ "The common law rule that confidential communications between a client and an attorney are privileged and protected from inquiry is recognized and enforced in this jurisdiction." *Hampton Police Assoc. v. Town of Hampton*, 162 N.H. 7, 15 (2011) (quotation omitted). New Hampshire Rule of Evidence 502 essentially codifies the common law attorney-client privilege. *Id.* Under Rule 502(b), "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client," including communications between the client and his lawyer. This privilege continues after the death of the client, *see Stevens*, 112 N.H. at 119, and may be claimed by the personal representative of a deceased client as well as the person who was the lawyer or the lawyer's representative at the time of the communication, "but only on behalf of the client," N.H. R. Ev. 502(c).

■ Rule 502(d), however, sets forth five categories of communications that are not privileged. Applicable here is Rule 502(d)(2), which excepts

from the privilege "a communication relevant to an issue between parties who claim through the same deceased client, regardless of whether the claims are by testate or intestate succession or by inter vivos transaction." Although the purpose of the attorney-client privilege is to encourage full disclosure of information between an attorney and his client by guaranteeing the inviolability of their confidential communications, *Riddle Spring Realty Co. v. State*, 107 N.H. 271, 274 (1966), the basis for the exception in Rule 502(d)(2) is that "all reason for assertion of the privilege disappears" when the privilege is being asserted not for the protection of the testator or his estate but for the protection of a claimant to his estate, *Stevens*, 112 N.H. at 119. This is so because the best way to protect the client's intent lies in the admission of all relevant evidence that will aid in the determination of his true will. *Id.* As the United States Supreme Court has noted, "[t]he general rule with respect to confidential communications is that such communications are privileged during the testator's lifetime and, also, after the testator's death unless sought to be disclosed in litigation between the testator's heirs"; "[t]he rationale for such disclosure is that it furthers the client's intent." *Swidler & Berlin v. United States*, 524 U.S. 399, 405 (1998) (quotation and ellipsis omitted).

Here, the parties claim through the same deceased clients. If the respondent is successful in proving that the petitioner unduly influenced the parents, the 2004 estate plan documents that bequeathed to the petitioner and his family all of the parents' assets will be voided. *Cf. Stevens*, 112 N.H. at 119 (noting in will contest that, if defendants were successful, they, rather than plaintiff, would be representatives of testator). The question, therefore, is whether the Attorney's file is relevant to an issue between the parties. N.H. R. Ev. 502(d)(2). In order to be relevant, the Attorney's file must have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.H. R. Ev. 401.

The respondent alleges that, in 2004, the petitioner unduly influenced the parents to leave all of their assets to the petitioner and his family at a time when the parents lacked the capacity to understand what they were signing. To invalidate a will on the ground of undue influence, there must be evidence sufficient to permit the inference that the testator was misled or coerced into making the will as it was made. *Bartlett v. McKay*, 80 N.H. 574, 574 (1923). It must appear that the alleged influence amounts "to force and coercion, destroying free agency, and not merely the influence of affection, or merely the desire of gratifying another; but it must appear that the will was obtained by this coercion." *Id.* at 574-75 (quotation omitted). "Undue influence to avoid a will must be of a kind that subjugates

the mind of the testator to that of the person seeking to control it, so as to destroy the free agency of the testator at the time the will is made." *Id.* at 575 (quotation omitted).

We have reviewed the Attorney's file and agree with the trial court that the file is relevant to the issues between the parties. The Attorney's file relates to the parents' intentions regarding their estate plan prior to the time the respondent alleges that they were unduly influenced by the petitioner and were incompetent to understand what they were signing. Thus, the file is relevant to determining whether the petitioner unduly influenced the parents at the time they executed their estate plan in 2004 and to ascertaining whether the 2004 estate plan documents reflect the parents' true intent. *See Remien v. Remien*, 1996 WL 411387, at *3 (N.D. Ill. 1996) (ordering production, under similar exception, of deceased father's letters to his attorney, which related to father's intention regarding disposition of his stock in corporation, because they were relevant to assessment of whether son's actions at time of stock redemption frustrated or fulfilled father's wishes); *In re Texas A & M–Corpus Christi Foundation*, 84 S.W.3d 358, 360-61 (Tex. App. 2002) (allowing discovery of information, under similar exception, from attorneys who assisted decedent with estate and trust matters prior to the gift at issue because it was relevant to decedent's longstanding intentions to make gift and to her mental acumen shortly before gift was made).

Relying upon *Gould, Larson, Bennet, Wells v. Panico*, 869 A.2d 653 (Conn. 2005), the petitioner argues that the exception in Rule 502(d)(2) is limited to cases in which the attorney's work includes *executed* estate plan documents, regardless of whether the attorney's work is relevant to the issues in the case. In *Gould*, the Connecticut Supreme Court held that "when the communications between a decedent and his attorney do not result in an executed will, the communications do not fall within the exception to the attorney-client privilege and thus are confidential." *Gould*, 869 A.2d at 655. Connecticut's exception to the attorney-client privilege, however, applies to "communications, by a client to the attorney who drafted his will, in respect to that document and transactions between them leading up to its execution," *id.* at 657 (emphasis omitted), and thus, is more limited than our exception, which allows for disclosure of "communication[s] relevant to an issue between parties who claim through the same deceased client." N.H. R. Ev. 502(d)(2). Given that Connecticut's exception is narrower than ours, we find *Gould* inapplicable.

Our conclusion that the Rule 502(d)(2) exception is not limited to attorney-client communications that culminate in executed estate plan documents is supported by the decisions of other courts in states that have

adopted an exception similar to ours. *See Ervesun v. Bank of New York*, 239 A.2d 10, 14 (N.J. Super. Ct. App. Div. 1968) (finding that, by adopting exception, legislature intended to depart from earlier rule that disallowed attorney from testifying to circumstances surrounding execution of earlier wills superseded by probated will); *Tanner v. Farmer*, 414 P.2d 340, 342-43 (Or. 1966) (concluding that, by applying exception in more recent case, court overruled earlier case disallowing testimony of attorney who had prepared two unexecuted wills). Accordingly, because the Attorney's file is relevant to an issue between parties who claim through the same deceased client, we hold that the trial court did not unsustainably exercise its discretion in allowing the file to be disclosed to the parties under Rule 502(d)(2).

In light of our holding that the Attorney's file is subject to disclosure pursuant to the exception in Rule 502(d)(2), we need not address the petitioner's arguments regarding whether there was an at-issue waiver of the attorney-client privilege or a compelling need for disclosure.

The petitioner next argues that the 2004 correspondence between him and the Attorney is protected by the attorney-client privilege. He contends that he contacted the Attorney on the parents' behalf as prospective clients and "[a]n expectation of privacy was . . . evident." Assuming, without deciding, that the attorney-client privilege protects communications between a prospective client, or a representative of a prospective client, and an attorney, and that the petitioner is entitled to claim the privilege on the parents' behalf, we find that these communications are also discoverable under Rule 502(d)(2).

As discussed above, the respondent alleges that the petitioner unduly influenced the parents to execute the 2004 estate plan documents when they were not competent to understand them. As with the Attorney's file, the correspondence between the petitioner and the Attorney in 2004 is relevant to the evaluation of the undue influence allegation and the determination of whether the 2004 estate plan documents reflect the parents' true intent. *Cf. Stevens*, 112 N.H. at 119; *In re Texas A & M–Corpus Christi Foundation*, 84 S.W.3d at 360 (finding discovery sought relevant to evaluating mental acumen of deceased at time gift was made). Accordingly, we conclude that the trial court did not unsustainably exercise its discretion in allowing disclosure of the 2004 correspondence between the petitioner and the Attorney.

The petitioner further contends that the trial court erred by expanding upon the assented-to discovery order. He maintains that the discovery order related only to estate plan documents signed in 2004 and that the

Attorney's file, which includes communications the Attorney had with the parents in 2001 and 2002 does not "pertain to" the executed 2004 documents.

█ Trial courts enjoy broad discretion in determining the limits of pretrial discovery. *See N.H. Ball Bearings v. Jackson*, 158 N.H. 421, 429 (2009). Here, the court reviewed the Attorney's file and found it relevant to the issues in this case, and, based upon our review of the file, we agree. Accordingly, to the extent that the trial court may have expanded the scope of its initial assented-to discovery order, we find no error by the trial court.

Finally, the petitioner filed a motion seeking to correct certain misstatements made by his counsel at oral argument. The respondent objects. Because our ruling today does not rely upon any of the alleged misstatements, we decline to rule on the petitioner's motion as it is moot.

·   *Affirmed.*

DALIANIS, C.J., and HICKS, LYNN and BASSETT, JJ., concurred.