# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2016-0444, <u>In re Estate of Scott Brewster</u>, the court on May 16, 2017, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The petitioner, Rachel Cuneo, appeals an order of the Circuit Court (<u>Quigley</u>, J.), in favor of the respondent, Zachary Brewster (son), the son of the decedent, Scott Brewster, denying her petition to be recognized as the decedent's spouse pursuant to RSA 457:39 (2004). She contends that the trial court erred by: (1) not finding that she and the decedent "acknowledged each other as husband and wife" and "were generally reputed to be such"; (2) admitting documents regarding the decedent's life insurance and testimony regarding his obituary; and (3) neither ruling on her requests for findings of fact and rulings of law, nor making its own "numbered" findings, nor citing our prior opinions in its order.

New Hampshire does not recognize common-law marriages except to the limited extent provided by RSA 457:39. <u>In re Estate of Bourassa</u>, 157 N.H. 356, 357 (2008). To establish status as a spouse under RSA 457:39, the survivor must demonstrate that, for the three years preceding the other party's death, they: (1) cohabited; (2) acknowledged each other as husband and wife; and (3) were generally reputed in their community to be husband and wife. <u>Bourassa</u>, 157 N.H. at 357. The evaluation of inconsistent conduct on the part of the decedent is a question of fact to be decided by the trial court. <u>Delisle v. Smalley</u>, 96 N.H. 58, 59 (1949).

"The findings of fact of the [trial court] are final unless they are so plainly erroneous that such findings could not be reasonably made." RSA 567-A:4 (2007). Thus, we review the record to determine if the trial court's findings could be reasonably made, recognizing that it is in the best position to resolve conflicts in the testimony, measure the credibility of witnesses, and determine the weight to be given evidence. <u>Bourassa</u>, 157 N.H. at 358; <u>see</u> <u>Cook v. Sullivan</u>, 149 N.H. 774, 780 (2003). Furthermore, the trial court is not compelled to believe even uncontested evidence. <u>Bourassa</u>, 157 N.H. at 358. We review the application of law to fact <u>de</u> <u>novo</u>. <u>Blagbrough Family Realty Trust v. A & T Forest Prods.</u>, 155 N.H. 29, 33 (2007).

We first address whether the trial court erred by finding that the petitioner and the decedent did not acknowledge each other as husband and wife. Acknowledgment of another as one's spouse under RSA 457:39 involves declaration or avowal of the relationship. <u>Bourassa</u>, 157 N.H. at 358. In rare

cases, the parties' conduct can conceivably rise to the level of an avowal of the existence of a legal relationship.  Id. at 359.

In this case, people close to the decedent — his brother, with whom he spoke bi-weekly, his son's mother, with whom he spoke weekly, and his son, with whom he "talked about . . . everything" — testified that the decedent did not indicate that the petitioner was his wife, that he intended to marry her, or that she was his son's step-mother.  The decedent's sister-in-law testified that, approximately a month before his death, she heard the decedent introduce the petitioner as his "girlfriend."  The mother of the decedent's son testified that, when she and the decedent contemplated marriage, he bought her a ring and announced their plan to marry, none of which he did with the petitioner.

The trial court found that the decedent "would likely have shared happy news" with his family and the mother of his son, such as a declaration of his relationship with the petitioner.  Although the petitioner characterizes this finding as being "based entirely upon conjecture," it was a reasonable inference from the decedent's previous announcement of his intent to marry his son's mother.  The petitioner argues that the decedent's failure to acknowledge her as his wife to his family shows that she "was not made to feel welcome by [his] family."  However, the petitioner testified that she saw the decedent's family on holidays and "had [a] very nice, happy relationship" with them.

The petitioner testified that she and the decedent did not have a joint bank account or cell phone plan, and that her name on her driver's license did not include his surname.  She also testified that they did not have a joint credit card account because the decedent "didn't use credit cards."  However, the record reflects a significant claim against the decedent's estate by a credit card company.  Thus, the trial court could have reasonably inferred that the decedent did not fully apprise the petitioner of his finances.

The petitioner points to testimony by several witnesses that the decedent, when making plans, frequently said, "I'll have to ask the wife," or something similar.  However, the decedent's long-time friend testified that the decedent employed this turn of phrase prior to having cohabited with the petitioner for seven years, which, the petitioner testified, was when he thought she had become his common-law spouse.  Thus, the trial court could have reasonably inferred that the decedent used this as a colloquial phrase, rather than a declaration of his relationship.

The petitioner points to a letter that she and the decedent wrote to a utility provider, which she signed using the decedent's surname, regarding an account in the decedent's name.  She argues that the decedent was aware that she used his name because he also signed the letter.  However, the trial court could have reasonably determined that the decedent acquiesced to her use of his surname on the letter for reasons other than acknowledging her as his wife.

The petitioner argues that utility bills identified her by the decedent's surname. However, the trial court noted reasonably that utilities put whatever names they are told on bills; as the court stated, utility companies "don't know the relationship between the people."

The petitioner argues that, after the trial court denied the son's motion for a directed verdict at the close of her case, evidence of the decedent's "claimed omissions" or failure to acknowledge her as his wife was "not enough to rebut [her] case." Cf. Renovest Co. v. Hodges Development Corp., 135 N.H. 72, 76 (1991) (allowing trial court to render judgment for defendant upon motion to dismiss at close of plaintiff's case). She implies that evidence was required that she or the decedent "specifically disavowed a marital relationship." However, even if the son had presented no evidence, the mere fact that the trial court denied the motion would not have compelled a ruling in her favor. See id. at 75-78 (discussing standards applicable to motions to dismiss in a bench trial). Although in Bourassa the parties affirmatively disavowed their marital status, such a disavowal is not required for a trial court to find no marital status under RSA 457:39. See Bourassa, 157 N.H. at 359. In Delisle, where the decedent specifically disavowed a marital relationship in her will, we held that even an outright disavowal "must be weighed against other evidence of acknowledgment of the relation." Delisle, 96 N.H. at 60.

The petitioner argues that the trial court "did not take into account [her] evidence." However, the trial court reviewed her evidence at length. She contends that the trial court did not find "that [she] or any of her witnesses were not credible." However, the trial court stated that its findings were based, in part, upon "the credibility and demeanor of the witnesses." See Nordic Inn Condo. Owners' Assoc. v. Ventullo, 151 N.H. 571, 586 (2004) (stating that we assume trial court made all subsidiary findings necessary to support its general finding). To the extent that the petitioner argues that her evidence regarding the decedent's statements was more persuasive than the son's evidence of the decedent's failure to acknowledge a marital relationship, we defer to the trial court's determination of the weight given to evidence. See Bourassa, 157 N.H. at 358; Delisle, 96 N.H. at 59.

The petitioner contends that the trial court "inappropriately" considered whether the decedent treated her "in a manner that a spouse would consider and care for another at the time of death" because "[a]ny apparent failure to provide for a common-law spouse is not a factor under RSA 457:39." The trial court found that the decedent did not make the petitioner the beneficiary of his life insurance policy or his 401(k) account, which it concluded "would appropriately have gone to a spouse, if one existed."

The petitioner argues that this finding "ignores the clear remedial intent of RSA 457:39: to provide a common-law status and right to inheritance for those lacking a formal ceremony." However, nothing in RSA 457:39 precludes the consideration of inheritance provisions, among other evidence, when determining

whether a decedent acknowledged a marital relationship.  See Delisle, 96 N.H. at 60 (stating that testamentary disavowal of common-law marriage must be weighed against other evidence of acknowledgment).  Furthermore, even without evidence of the decedent's failure to provide for the petitioner, on this record, the trial court could have reasonably concluded that the decedent did not acknowledge the petitioner as his wife.  See Welch v. Gonic Realty Trust Co., 128 N.H. 532, 536 (1986) (stating error harmless when it was not prejudicial to the substantial rights of the party assigning it).

The petitioner argues that the decedent may have failed to provide for her upon his death because he wished to provide for his son.  However, we cannot conclude that the trial court's inference was unreasonable.  See Bourassa, 157 N.H. at 358.  To the extent that the petitioner argues that the trial court improperly considered the son's interests in determining her status, we note that the court stated that it was "limited to the statute," pursuant to which the son's interests were not relevant to the petitioner's status.

To the extent that the petitioner argues that the trial court required her to show that the decedent acknowledged her as his spouse for longer than the statutorily required three years, we do not read the trial court's order as resting upon the length of time the decedent allegedly acknowledged her as his spouse, but upon his lack of declaration or avowal.

Accordingly, upon this record, we conclude that the trial court could have reasonably found that the petitioner and the decedent did not acknowledge each other as husband and wife.  See Bourassa, 157 N.H. at 358.  Having reached this conclusion, we need not address the court's further finding that they were not generally reputed to be married.  See id. at 360.

We next address the petitioner's evidentiary issues.  We note that the petitioner acknowledges that these issues concern evidence upon which the trial court did not specifically rely.

We review a trial court's decisions on the admissibility of evidence under an unsustainable exercise of discretion standard.  Petition of Stompor, 165 N.H. 735, 738 (2013).  To meet this standard, the petitioner must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of her case.  Id.

To the extent that the petitioner argues that the son's mother could not testify that she received a payment from the decedent's life insurance, she does not explain why the trial court erred when it allowed the mother to "testify to what she knows."  To the extent that the petitioner argues that the trial court erred in admitting the transmittal letter and check stub from the life insurance payout, she does not explain how she was prejudiced by the admission of these documents.  As the trial court noted, they were "duplicative of the testimony given."  Similarly, to the extent that she argues that testimony regarding the

4

amount of the policy was unclear, she does not explain how that prejudiced her case.  See id.

The petitioner argues that the trial court improperly admitted hearsay when it allowed the decedent's mother to testify about his published obituary. The mother testified that the petitioner had approved the obituary and that it identified her as the decedent's "soul mate."  The petitioner contends that this testimony was not admissible pursuant to New Hampshire Rule of Evidence 803(19) as reputation in the community concerning a person's marriage because it lacked the requisite indicia of trustworthiness.

However, the petitioner also argues that "[t]he terms 'soul mate' and 'husband' [sic] are analogous and are not mutually exclusive" and that the "use of the term 'soul mate' could only support" her status as the decedent's spouse. For the purposes of this case, we agree and, therefore, cannot conclude that the petitioner's case was prejudiced by the admission of this testimony.  See Stompor, 165 N.H. at 738.

Finally, we turn to the petitioner's complaints about the trial court's order. In this case, the trial court issued a six-page narrative order, in which it reviewed both parties' evidence in detail.  The petitioner argues that the order is "statutorily deficient" because RSA 567-A:4 requires the trial court to "report the material facts" and the order "did not even use the terms 'material facts' or 'facts.'"  She further argues that the trial court "did not allow or deny [her] numbered proposed findings of fact" and "did not make any specific numbered findings of fact and rulings of law of its own."  However, the trial court is not required to respond specifically to the parties' proposed findings and rulings.  See Drucker's Case, 133 N.H. 326, 332 (1990) (addressing superior court orders).  An order sufficiently responds to requested findings when it states the essential facts sufficient to support the decision in narrative form.  See id.

To the extent that the petitioner argues that the order did not adequately explain the grounds for its decision, we disagree.  To the extent that the petitioner argues that the order is "defective" because it does not cite our prior opinions, the trial court was not required to cite any specific cases.

The remaining issues raised by the petitioner are either not sufficiently developed, see State v. Blackmer, 149 N.H. 47, 49 (2003), or otherwise do not warrant further discussion, see Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

Dalianis, C.J., and Hicks, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,**
**Clerk**