**CONDITIONALLY GRANT; and Opinion Filed August 22, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-01378-CV

## IN RE HEDY A. RITTENMEYER, INDEPENDENT EXECUTOR OF THE ESTATE OF CHRISTOPHER ALLEN RITTENMEYER, DECEASED, Relator

**Original Proceeding from the Collin County Probate Court No. 1
Collin County, Texas
Trial Court Cause No. PB1-0072-2017**

## OPINION ON REHEARING

Before Justices Lang-Miers, Myers, and Boatright
Opinion by Justice Lang-Miers

Before the Court is relator's May 2, 2018 motion for rehearing. We grant the motion, withdraw our April 19, 2018 opinion and order denying relator's petition for writ of mandamus, and substitute the following opinion and order in their place. This is now the opinion of the Court.

In this original proceeding, relator complains of the trial court's order compelling her to respond to discovery requests that require production and disclosure of documents and information she contends are protected by the attorney-client privilege and otherwise beyond the proper scope of discovery. To be entitled to mandamus relief, a relator must show both that the trial court has clearly abused its discretion and that relator has no adequate appellate remedy. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). We conditionally grant the relief requested.

## Background

Relator Hedy A. Rittenmeyer ("Hedy") is the independent executrix of the estate of her son Christopher Allen Rittenmeyer ("Chris") pursuant to a 2011 will admitted to probate (the "2011 Will"). The real party in interest is Chris's widow, Nicole Marie Lockman Rittenmeyer ("Nicole"). In the underlying proceeding, Hedy brought a declaratory judgment claim in her capacity as executrix of Chris's estate against Chris's former employer and Nicole. Hedy sought declarations that Chris's unpaid bonuses are separate property pursuant to a pre-nuptial agreement between Chris and Nicole and should be distributed to the Estate. Nicole asserted counterclaims seeking declarations that the unpaid bonuses should be distributed to her, the pre-nuptial agreement is not enforceable, and alternatively, that Hedy breached the pre-nuptial agreement, excusing Nicole from further performance under the agreement. Nicole is not a beneficiary under the 2011 Will and did not challenge the validity of the 2011 Will, nor did Hedy seek any relief regarding the 2011 Will.

Nicole sought discovery of drafts of wills prepared after the 2011 Will, trust documents under which Chris was a beneficiary or grantor, and communications reflecting Chris's intentions about providing for Nicole. Hedy objected to the discovery requests, asserted that the information was privileged and beyond the scope of proper discovery, and provided a privilege log. Nicole filed a motion to compel, contending that some of the responses and documents are excepted from privilege by rule 503(d)(2), Texas Rules of Evidence, which provides that the attorney-client privilege does not apply "if the communication is relevant to an issue between parties claiming through the same deceased client." Specifically, Nicole argued below that the trust information "is relevant to the issue of whether [Chris] provided a fair and reasonable disclosure of his property or financial obligations, which is a basis for unenforceability of the Pre-Marital Agreement" under section 4.006(a)(2)(A) of the family code. And she argued that the draft wills were relevant

because Chris told her there was a subsequent will that provided for her if he died. Nicole contended that if there is no subsequent will, then the pre-nuptial agreement is unenforceable because Chris fraudulently induced her to sign it. Nicole argued generally that the draft wills and communications are not subject to the attorney-client privilege because they are relevant to an issue between parties claiming through the same deceased client under rule of evidence 503(d)(2).

At the conclusion of the hearing on the motion to compel, the court stated: "[W]hat I authorize to be developed in discovery does not necessarily mean that I would allow that same information to be admitted at the trial. It may be that you'll find out about it, but then it's going to be subject to a privilege that prevents it from being introduced as evidence at the trial even though you'll know about it." The trial court granted Nicole's motion to compel.

In this original proceeding, Hedy seeks a writ of mandamus directing the trial court to vacate the order ("Order") (1) compelling a response to interrogatory number 2; (2) requiring identification of "each trust which identifies Christopher as a beneficiary," and responses to requests for production numbers 3, 6, and 9;[1] and (3) requiring production of (a) trust documents, (b) draft wills, and (c) written communications from Chris to any other person expressing "his desire or intention to have all or a portion of his estate go to Nicole upon his death." Hedy also contends that "[t]he trial court's suggestion that it might later exclude evidence on privilege grounds runs counter to the proper analysis of a claim of privilege."

With respect to trusts for which Chris was a beneficiary or grantor, addressed in interrogatory number 2 and request for production number 3, Hedy argues:

- She does not have access to the trusts in her capacity as executor of Chris's estate;

---

[1] The Order also grants Nicole's motion to compel responses to requests for production numbers 7 and 8, but Hedy's petition for writ of mandamus seeks relief only as to interrogatory number 2 and requests for production numbers 3, 6, and 9.

- The rule 503(d)(2) exception does not apply because Chris's parents, as the grantors of the trusts, are the clients with respect to the trusts and are not deceased, nor are they "claiming through the same deceased client"; and

- The only documents responsive to request for production number 3 are privileged and not relevant.

With respect to draft wills and related attorney-client communications, sought by requests for production numbers 6 and 9, Hedy argues:

- The rule 503(d)(2) exception does not apply to draft wills because a draft will is not relevant to the question whether a different will superseded the 2011 Will;

- The "claiming through" requirement of the rule 503(d)(2) exception is not satisfied. Hedy is not claiming through Chris or the 2011 Will because she is just the executor, not the beneficiary; and

- Nicole is not "claiming through" Chris because Nicole is attacking the 2011 Will. Hedy relies on *Emerson v. Scott*, 87 S.W. 369 (Tex. Civ. App.—Dallas 1905, no writ), in support of this argument.

## Applicable Law

The trial court has broad discretion to resolve discovery disputes. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (per curiam) (orig. proceeding). A party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action. TEX. R. CIV. P. 192.3. The attorney-client privilege does not apply if the communication is "relevant to an issue between parties claiming through the same deceased client." TEX. R. EVID. 503(d)(2).

Nicole did not dispute Hedy's contention that the attorney-client privilege applied to the requested discovery, and instead relied on the exception. Consequently, Nicole bore the burden of

establishing that the exception applied. *In re Christus Santa Rosa Health Sys.*, 492 S.W.3d 276, 279–80 (Tex. 2016) (orig. proceeding) ("Once the party claiming privilege presents a prima facie case that the documents are privileged, the burden shifts to the party seeking production to prove that an exception to the privilege applies.").

The supreme court recently explained that the attorney-client privilege protects significant interests:

> Privileges represent society's desire to protect certain relationships. The attorney-client privilege holds a special place among privileges: it is the oldest and most venerated of the common law privileges of confidential communications. As the most sacred of all legally recognized privileges, its preservation is essential to the just and orderly operation of our legal system.
>
> The privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out. The privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice. The privilege's purpose could not be more evident: to encourage clients to make full disclosure to their attorneys and, in return, to allow clients to obtain full, fair, and candid counsel. By promoting full and frank communications between attorneys and their clients, the privilege promotes broader public interests in the observance of law and administration of justice.

*Paxton v. City of Dallas*, 509 S.W.3d 247, 259–60 (Tex. 2017) (footnotes, citations, and internal quotation marks omitted). The court also recognized that "once privileged information is disclosed, confidentiality is lost for all times and all purposes." *Id.* at 271.

Texas jurisprudence contains scant authority addressing the exception found in rule 503(d)(2). The exception states:

> (d) **Exceptions.** Th[e] [attorney-client] privilege does not apply: . . .
>
> > (2) ***Claimants Through Same Deceased Client.*** If the communication is relevant to an issue between parties claiming through the same deceased client.

For the exception to apply, the rule first requires that the information is "relevant to an issue between parties." It is well-established that evidence is relevant if: "(a) it has any tendency

to make a fact more or less probable than it would be without the evidence, and (b) the fact is of consequence in determining the action." TEX. R. EVID. 401; *see also In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 808 (Tex. 2017) (orig. proceeding); *In re Paschall*, No. 10-12-00339-CV, 2013 WL 474368, at *4 (Tex. App.—Waco Feb. 7, 2013, orig. proceeding) (mem. op.). Texas courts have applied the rule 503(d)(2) exception when a party contends the information is relevant to a claim that a decedent lacked capacity to execute codicils or trust documents or was subject to undue influence. *See, e.g., In re Tex. A&M Corpus Christi Found., Inc.*, 84 S.W.3d 358, 361 (Tex. App.—Corpus Christi 2002, orig. proceeding) (permitting depositions of decedent's counsel regarding decedent's intentions and capacity where Foundation alleged decedent's gift was planned and valid but estate contended gift was procured through fraud); *see also In re Durbin*, No. 03-16-00583-CV, 2017 WL 2628069, at *4 (Tex. App.—Austin June 16, 2017, orig. proceeding) (mem. op.) (trial court concluded estate-planning documents were relevant to decedent's capacity and were excepted from attorney-client privilege under rule 503(d)(2)).

## Discussion

In her capacity as independent executrix, Hedy seeks assets for the estate and seeks to enforce the pre-nuptial agreement. Nicole seeks to recover those assets and avoid enforcement of the pre-nuptial agreement. Although Nicole does not dispute that the attorney-client privilege applies, she argues that the discovery she seeks is "relevant to an issue between parties claiming through the same deceased client." TEX. R. EVID. 503(d)(2). We conclude that Nicole did not establish that the privileged discovery was "relevant to an issue between parties" and did not satisfy her burden to prove that the rule 503(d)(2) exception applies.

### 1. Draft wills and related communications

Nicole contended generally in her motion to compel, "[u]pon information and belief," that Hedy and Chris's sister Ashley located and destroyed a subsequent will that Chris executed. The

portion of the motion seeking to compel production of the draft wills and communications about them relied only on a general statement of the language in rule 503(d)(2). Nicole's argument at the hearing on the motion to compel was that if she could prove that Hedy and Ashley took and destroyed the subsequent will, the draft wills would be "relevant to the issues at hand."

Hedy denies Nicole's allegations and argues that draft wills and Chris's communications with his lawyer about them are not relevant because an unexecuted draft of a will does not confer any rights and does not revoke any prior will.[2] Nicole acknowledges that the "existence of draft wills may not specifically prove revocation, but that is not the standard to determine their relevancy and discoverability." She claims here that the drafts and communications are relevant because if they do not provide benefits to her on Chris's death it "tends to make the existence of fraud more likely" and if they do provide for her, it "supports Nicole's contention that Chris validly executed a subsequent will that was destroyed, or that he lied when he told Nicole there already existed a subsequent will that provided for her on his death."

Significantly, however, Chris could not have revoked the 2011 Will "except by a subsequent will, codicil, or declaration in writing, executed with like formalities, or by . . . destroying or cancelling the same or causing it to be done in his presence." *Morris v. Morris*, 642 S.W.2d 448, 449–50 (Tex. 1982) (quoting statute and explaining that "the statutory method of revoking a will is exclusive"). Documents showing Chris's "present intent to change or revoke a testamentary instrument in the future cannot accomplish revocation of the instrument, nor [are they] evidence of the revocation." *Powell v. Powell*, 554 S.W.2d 850, 856 (Tex. Civ. App.—Tyler 1977, writ ref'd n.r.e.). Consequently, drafts of wills are not relevant to whether Chris executed a later will. For the same reason, drafts of wills are not relevant to Nicole's claims that Hedy and Ashley destroyed "a later Will" that Chris executed.

---

[2] Hedy, Ashley, and Chris's attorney all submitted affidavits stating that they were not aware of any other executed will.

Additionally, the drafts would not tend to prove Nicole's claims that the pre-nuptial agreement was not enforceable under section 4.006(a) of the family code or was breached by Hedy's failure to file the lawsuit under seal. Nicole's claim to the funds from Chris's employer, based on her pleadings, depends on whether the pre-nuptial agreement is enforceable which, in turn, depends on whether Nicole signed it without being "provided a fair and reasonable disclosure of the property or financial obligations of the other party" and whether the agreement was unconscionable. *See* TEX. FAM. CODE ANN. § 4.006(a) (West 2006).[3] Nicole's allegation in her motion to compel that drafts of never-executed wills might lead to proof of Chris's fraud regarding the pre-nuptial agreement does not show relevancy. Nicole already has evidence that the only enforceable will is the 2011 Will admitted to probate and that it does not provide benefits to her. Consequently, she has not shown that disclosure of privileged drafts of wills will lead to the discovery of admissible evidence or that disclosure of the draft wills provides "a reasonable expectation of obtaining information that will aid the dispute's resolution." *See In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d at 808 (quoting *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding)).

We conclude that Nicole did not establish that an exception applied to the attorney-client privilege regarding the draft wills and related correspondence in requests for production numbers 6 and 9.[4]

---

[3] Family code section 4.006(a)(2)(A) provides that "[a] premarital agreement is not enforceable if the party against whom enforcement is requested proves that: . . . (2) the agreement was unconscionable when it was signed and, before signing the agreement, that party: (A) was not provided a fair and reasonable disclosure of the property or financial obligations of the other party . . . ." TEX. FAM. CODE ANN. § 4.006(a)(2)(A) (West 2006).

[4] We disagree with the trial court's suggestion that once disclosed, the attorney-client communications might be inadmissible at trial on the basis of privilege. As the court noted in *Paxton*, "[o]nce information has been disclosed, loss of confidentiality is irreversible. The bell cannot be unrung, and neither dissemination nor use can be effectively restrained." *Paxton*, 509 S.W.3d at 261.

**2. Trust documents**

Hedy also claims that the trial court abused its discretion by ordering discovery of trust documents in response to interrogatory number 2 and request for production number 3. She contends that she, as executrix, does not have those documents and, in her objections, stated that she was unaware of documents responsive to the request. She also contends that any trust documents among Hedy, her husband, and their lawyer are privileged, and no exception applies.

In the Order, the court overruled Hedy's objections to interrogatory number 2 and request for production number 3, including the attorney-client privilege objections. The court ordered Hedy to "provide a full and complete response" to interrogatory number 2. And for request for production number 3, the court ordered Hedy to "produce responsive documents that are in her possession, custody, or control."

Hedy contends that Nicole's only argument about the information requested in interrogatory number 2 was that it was "relevant to the issue of whether the Decedent provided a fair and reasonable disclosure of his property or financial obligations, which is a basis for unenforceability of the Pre-Marital Agreement under Tex. Fam. Code Ann. Sec. 4.006(a)(2)(A)." And the motion to compel regarding interrogatory number 2 does not make any reference to the exception to the attorney-client privilege. Consequently, regardless of whether the requested discovery is relevant, Nicole has not alleged or proven that the exception to the privilege applies. We conclude that the trial court abused its discretion in overruling Hedy's objections and assertions of privilege and ordering responses to interrogatory number 2 including disclosure of privileged information.

As to the response to request for production number 3, requesting trusts for which Chris was a grantor[5] or beneficiary, Hedy argues that the rule 503(d)(2) exception does not apply to the

---

[5] Because the parties' arguments are limited to trusts that identify Chris as a beneficiary, our discussion is likewise limited.

trust documents because Chris's parents, as the grantors of the trusts, are the clients with respect to the trusts, are not deceased, and retain a privilege in those documents. Hedy's counsel argued generally at the hearing on the motion to compel that any trusts for which Chris's parents were grantors would be subject to the attorney-client privilege held by his parents and would not be subject to the rule 503(d)(2) exception. Nicole's counsel did not disagree, arguing below that "I don't want, nor will I ever ask for attorney/client privilege [sic] with respect to communications between Mr. Botts, Mr. Rohan, and mom and dad. I am not asking for that." Additionally, the rule 503(d)(2) exception does not apply to the communications among Hedy, her husband, and their counsel because the rule excepts the communications of a "deceased client," and Hedy and her husband are not deceased clients. Consequently, we conclude that the trial court abused its discretion in overruling Hedy's objections and assertions of privilege in response to request for production number 3 and ordering production of privileged documents.

## Conclusion

Based on the record before us, we conclude relator has established that the trial court abused its discretion by compelling disclosure and production of the privileged discovery discussed in this opinion. Accordingly, relator has shown she is entitled to the relief requested, and we conditionally grant her petition for writ of mandamus. We order the trial court to vacate the portion of the order signed November 7, 2017 that overrules relator's assertions of privilege in response to interrogatory number 2 and requests for production numbers 3, 6, and 9. We are confident the trial court will comply, and the writ will issue only if it fails to do so.


/Elizabeth Lang-Miers/
_____
ELIZABETH LANG-MIERS
171378F.P05                          JUSTICE

–10–