NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Hillsborough-northern judicial district
Case No. 2024-0005
Citation: Atl. Anesthesia, P.A. v. Lehrer, 2025 N.H. 42

ATLANTIC ANESTHESIA, P.A. & a.

v.

IRA LEHRER;

ATLANTIC ANESTHESIA, P.A. & a.

v.

NATHAN JORGENSEN & a.;

WENTWORTH-DOUGLASS HOSPITAL

v.

ATLANTIC ANESTHESIA, P.A. & a.

Argued: October 30, 2024
Opinion Issued: September 16, 2025

Holland & Knight LLP, of Boston, Massachusetts (W. Scott O'Connell, on the brief and orally), and Nixon Peabody LLP, of Manchester (Nathan P.

Warecki and Erin S. Bucksbaum on the brief), for Atlantic Anesthesia, P.A. and North American Partners in Anesthesia (New Hampshire) LLP.

Shaheen & Gordon, P.A., of Concord (William E. Christie on the brief and orally), and Horty, Springer & Mattern, P.C., of Pittsburgh, Pennsylvania (Daniel Mulholland III and Mary Paterni on the brief), for Wentworth-Douglass Hospital.

Orr & Reno, P.A., of Concord (Derek D. Lick and Elizabeth C. Velez on the brief, and Derek D. Lick orally), for Dr. Ira Lehrer, Dr. Nathan Jorgensen, and Dr. George Kenton Allen.

COUNTWAY, J.

[¶1] This case comes to us on interlocutory appeal pursuant to Supreme Court Rule 8. Wentworth-Douglass Hospital (WDH) and Dr. Ira Lehrer, Dr. Nathan Jorgensen, and Dr. George Kenton Allen (physician defendants) challenge orders of the Superior Court (Anderson, J.) compelling them to disclose to Atlantic Anesthesia, P.A. (Atlantic) and North American Partners in Anesthesia (New Hampshire) LLP (NAPA-NH) (collectively Atlantic/NAPA-NH) certain communications that WDH and the physician defendants assert are protected by the attorney-client privilege and the common interest doctrine and ordering their counsel to sit for depositions. See N.H. R. Ev. 502. We conclude that the crime-fraud exception to the attorney-client privilege does not apply to the claims at issue in this case, but affirm the trial court's ruling that the common interest doctrine does not apply to communications made prior to the date litigation was pending. We vacate the trial court's ruling that counsel can be deposed and its ruling requiring the disclosure of privileged communications under a theory of necessity.

I. Background

[¶2] This consolidated case involves claims and counterclaims by Atlantic/NAPA-NH, WDH, and the physician defendants relating to the physician defendants leaving Atlantic/NAPA-NH's employment and becoming employees of WDH. In 2019, Atlantic/NAPA-NH separately sued defendant Lehrer and defendants Jorgensen and Allen after they left Atlantic/NAPA-NH's employment and were hired by WDH. The two cases against the physician defendants were later consolidated (physicians case). Also in July 2019, WDH brought suit against Atlantic/NAPA-NH seeking injunctive relief and asserting

a number of claims, and Atlantic/NAPA-NH filed counterclaims against WDH (WDH case). Discovery and related motion practice proceeded in both cases until they were consolidated in November 2021. This appeal requires us to consider trial court rulings made in an order issued in the physicians case and two orders issued after the cases were consolidated.

A. Facts

[¶3] We accept the statement of facts presented in the interlocutory appeal statement and rely upon the record for additional facts as necessary. See In the Matter of Liquidation of Home Ins. Co., 175 N.H. 363, 364 (2022). We recite here only those facts necessary to decide the transferred questions.

[¶4] WDH contracted with Atlantic, a physician group, for the provision of anesthesia and pain management services to WDH's patients. In December 2014, the physicians who owned Atlantic, including Lehrer and Jorgensen, sold their ownership interests in Atlantic to NAPA-NH for $12.6 million. After selling their ownership interests, Lehrer and Jorgensen, along with the other anesthesiologists, became employees of Atlantic/NAPA-NH. Allen was hired as an employee in 2016 after NAPA-NH had acquired Atlantic. The stock purchase agreement and the physician defendants' employment contracts included various restrictive covenants. Included in these were covenants not to compete and non-solicitation provisions that prohibited them from, among other things, soliciting their fellow employees to work for another employer.

[¶5] In November 2016, WDH and Atlantic/NAPA-NH entered into an exclusive contract in which Atlantic/NAPA-NH agreed to provide all of the anesthesiology and pain management services required by the hospital (anesthesia contract). The anesthesia contract was set to expire on November 30, 2019, and was to automatically renew unless either party provided 180 days' notice of nonrenewal. Lehrer participated in discussions with WDH relating to the potential renewal. As negotiations relating to the anesthesia contract continued in November 2018, Ellen Caille, WDH's Executive Vice President, sent Lehrer a text message asking him to meet with her and WDH's Chief Executive Officer, Gregory Walker, "to discuss NAPA contract and next steps per our discussion." (Quotation omitted.) During a November 13, 2018 meeting attended by Caille, Walker, Lehrer, and Jorgensen, WDH indicated that it was considering not renewing the anesthesia contract. Shortly thereafter, Lehrer emailed several other physicians in the practice group, including Jorgensen and Allen, stating an interest in "develop[ing] a strategy moving forward on whether we stay with NAPA or become hospital employees," and suggesting that if they were to move forward with becoming hospital employees, they should hire legal representation so that they could "understand [their] options." (Quotations omitted.) On February 4, 2019, the physician defendants and other Atlantic/NAPA-NH anesthesiology providers executed an engagement letter to retain Attorney Robert Best.

3

[¶6] Lehrer, Jorgensen, and Allen were invited to attend a May 6, 2019 meeting with WDH administrators; WDH's counsel, Attorney Daniel Mulholland; and Attorney Best. Four days prior to the May 6 meeting, WDH, the physician defendants, and other Atlantic/NAPA-NH providers executed a common interest agreement, which stipulated that their shared interest was in "exploring potential future relationships." (Quotation omitted.) A second meeting between the physician defendants and WDH was held on May 20, 2019. Best and Mulholland attended the meeting.

[¶7] On May 22, 2019, WDH sent a letter of nonrenewal to Atlantic/NAPA-NH, along with an offer, to be held open for 30 days, to extend the anesthesia contract for one year. On June 18, WDH rescinded the extension offer without providing a reason. On June 25, counsel for WDH informed Atlantic/NAPA-NH that WDH intended to enter into discussions with the providers about continuing to provide services after the expiration of the anesthesia contract. On June 27, Atlantic/NAPA-NH wrote to WDH informing it of Atlantic/NAPA-NH's intention to enforce the restrictive covenants.

[¶8] On July 11, 2019, Atlantic/NAPA-NH terminated Lehrer's employment, and five days later filed a civil action against him, asserting breach of contract, tortious interference with prospective economic advantage and contractual relations, and misappropriation of trade secrets. Shortly thereafter, WDH sued Atlantic/NAPA-NH seeking to bar enforcement of the restrictive covenants. Atlantic/NAPA-NH later asserted counterclaims against WDH for, among other things, tortious interference with contractual relations. Jorgensen and Allen each resigned thereafter from Atlantic/NAPA-NH. By late August 2019, all but one of the Atlantic/NAPA-NH anesthesiology providers had submitted their resignations to Atlantic/NAPA-NH. Best and Mulholland continued to negotiate the providers' employment with WDH, which included discussions about salary and indemnification, and by mid-October 2019, nearly all of the Atlantic/NAPA-NH providers signed employment contracts with WDH. Lehrer signed his on November 4, 2019. Atlantic/NAPA-NH filed suit against Jorgensen and Allen on December 31, 2019, alleging the same claims as those against defendant Lehrer, as well as claims for breach of fiduciary duty and civil conspiracy.

B.  Procedural History and Trial Court Orders

[¶9] In March 2020, in the case against Lehrer, Atlantic/NAPA-NH requested that the trial court compel the production of materials that Lehrer had withheld during discovery, which he claimed were protected from disclosure by the "common interest privilege," and order Lehrer to produce a privilege log. Atlantic/NAPA-NH argued that the common interest doctrine did not apply to shield certain communications disclosed to a third party and that certain attorney-client communications were not privileged because they fell within the "crime-fraud exception" to the privilege. See N.H. R. Ev. 502(d)(1).

4

In October 2020, after the two cases against the physician defendants had been consolidated, the trial court issued an order in which it found that it "need not reach a determination" as to whether the common interest doctrine applied because Atlantic/NAPA-NH had made a sufficient showing that the crime-fraud exception applied. In doing so, it determined that although this court had not yet ruled on the issue, the exception applied to types of conduct other than strict crimes or frauds, and that a breach of fiduciary duty was sufficient to trigger the exception. The court concluded that Atlantic/NAPA-NH had established a sufficient threshold showing to justify in camera review of the contested communications, and ordered the physician defendants to submit to the court for review "copies of all communications they seek to protect."

[¶10] In November 2022, after all cases had been consolidated, Atlantic/NAPA-NH filed motions to: (1) strike privilege assertions made by WDH and compel the production of withheld materials; (2) strike privilege assertions made by the physician defendants; (3) resume the depositions of Caille and Walker to obtain answers to questions that the deponents had refused to answer on privilege grounds; and (4) compel the depositions of Attorneys Best and Mulholland. WDH and the physician defendants each filed objections.

[¶11] In an April 18, 2023 order, the trial court ruled that the physician defendants and WDH could not rely on the common interest doctrine to shield communications between themselves and/or between their respective counsel prior to June 27, 2019, when Atlantic/NAPA-NH provided written notice to WDH that it intended to enforce the physicians' restrictive covenants, because until that date there was no protectable common interest. The court also ruled that certain communications between the physician defendants and WDH and/or their counsel that occurred after June 27, 2019, and until November 4, 2019, when the last Atlantic/NAPA-NH provider signed a contract with WDH, were subject to disclosure pursuant to the crime-fraud exception because Atlantic/NAPA-NH had made a sufficient showing that: (1) the physician defendants had breached their fiduciary duties to Atlantic/NAPA-NH; (2) WDH had tortiously interfered with Atlantic/NAPA-NH's contractual relations; and (3) the physician defendants and WDH had used the services of Attorneys Best and Mulholland to perpetrate the breach of fiduciary duty and tortious interference.

[¶12] The trial court concluded, however, that the crime-fraud exception did not extend to all communications made in the course of the attorney-client relationship, but was limited to communications and documents connected to the physician defendants' alleged breaches of fiduciary duties and WDH's alleged tortious interference with Atlantic/NAPA-NH's contractual relations with its providers. Based on the record, the trial court ruled that communications between the physician defendants and WDH and/or between their counsel prior to November 4, 2019 were subject to disclosure, but that

5

communications between the physician defendants and Attorney Best and between WDH and Attorney Mulholland were not subject to disclosure. The trial court also ruled that communications that did not include attorneys were not privileged, unless it could be shown that the communications were made for the purpose of obtaining legal advice or otherwise communicating with an attorney. In addition, the trial court ordered Attorneys Best and Mulholland to sit for depositions as to conversations that they had with each other not in the presence of other witnesses who had been or will be deposed and that relate to the alleged breach of fiduciary duties and tortious interference up until November 4, 2019.

[¶13] The physician defendants and Atlantic/NAPA-NH each filed a motion to clarify and/or reconsider the April 18, 2023 order. The trial court denied the physician defendants' motion and granted Atlantic/NAPA-NH's motion in part. In its motion to reconsider and for clarification, Atlantic/NAPA-NH requested that the court find language from certain emails not privileged. In an order issued July 21, 2023, the trial court ruled that certain statements made in six emails between Attorney Best and at least one of the physician defendants were not privileged because Atlantic/NAPA-NH had demonstrated that it had a "compelling need" for certain facts included in the emails. Thereafter, the physician defendants and WDH brought this interlocutory appeal.

## II. Analysis

[¶14] The trial court transferred the following questions:

1. Does the New Hampshire crime-fraud exception to the attorney-client privilege under N.H. R. Evid. 502(d)(1) and/or the common interest privilege apply to tort claims for breach of fiduciary duty or tortious interference?

2. Does the party seeking to show that the crime-fraud exception applies, have the burden to demonstrate that there was a reasonable basis to apply the exception?

3. Did the Superior Court err in concluding that there was a reasonable basis to apply the crime-fraud exception based on the facts described in its Order?

4. Does the common interest [doctrine] apply to communications in the absence of pending litigation?

5. Is the deposition of trial counsel permitted when notice is not provided as required by N.H. Superior Court Rule § 36(d)(5)(i)?

6

6. Did the Trial Court err when it required the disclosure of the Physician Defendants' otherwise protected attorney-client communications under a theory of "necessity"?

[¶15] For the reasons that follow, we decline to answer the transferred questions as framed, but (1) affirm the trial court's ruling that the common interest doctrine did not apply until June 27, 2019; (2) reverse the trial court's ruling that the crime-fraud exception to the attorney-client privilege applies to the claims of breach of fiduciary duty and tortious interference with contractual relations at issue here; and (3) vacate the trial court's ruling that counsel can be deposed and its ruling requiring the disclosure of certain facts contained in the email communications between Attorney Best and the physician defendants.

## A. The Attorney-Client Privilege

[¶16] All but question 5 of the transferred questions require us to interpret New Hampshire Rule of Evidence 502, which essentially codifies the common law attorney-client privilege. See Petition of Stompor, 165 N.H. 735, 738 (2013). We review the trial court's interpretation of rules of evidence de novo. See State v. Paul, 176 N.H. 262, 265 (2023). "When interpreting a rule of evidence or a statute, we will first look to the plain meaning of the words used and ascribe to them their plain and ordinary meaning where possible. We will not add words to the plain language of a rule." Id. (citation omitted).

[¶17] Rule 502(b) states, in relevant part, that:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services . . . (3) by the client or the client's representative or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein . . . .

N.H. R. Ev. 502(b). Rule 502(d), however, sets forth five categories of communications that are not privileged. One exception provides that there is no privilege under the rule "[i]f the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit in the future what the client knew or reasonably should have known to be a crime or fraud." N.H. R. Ev. 502(d)(1).

[¶18] The burden of establishing the existence of the attorney-client privilege rests with the party asserting it. See 2 Paul R. Rice, Attorney-Client Privilege in the United States § 11.10, at 923 (2011); McCabe v. Arcidy, 138 N.H. 20, 25 (1993). Once information is determined to fall within the scope of

7

the attorney-client privilege, the burden is on the party seeking the information to show that an exception applies. See F.D.I.C. v. Ogden Corp., 202 F.3d 454, 460 (1st Cir. 2000).

## 1. The Common Interest Doctrine (Question 4)

[¶19] In its April 18, 2023 order, the trial court rejected the argument that because WDH and the physician defendants had a "shared legal interest" and sought legal assistance to "meet legal requirements and plan accordingly," certain communications about, and the content of, the May 6 and May 20, 2019 meetings were protected by the attorney-client privilege. The trial court ruled that although the communications at issue pertained to a common interest, the common interest doctrine did not apply to communications made between the physician defendants and WDH and their lawyers prior to the date litigation was "pending," which the trial court determined was June 27, 2019, "because at this point the threat of litigation was very real." On appeal, the physician defendants and WDH argue that the trial court erred in so ruling, because the common interest doctrine can apply in the absence of pending litigation. We disagree.

[¶20] As a general matter, no privilege attaches to a communication between a client and an attorney that is made in the presence of a third party because it is not deemed confidential. See 8 J. Wigmore, Evidence § 2311 (McNaughton rev. 1961). The common interest doctrine is an exception to this rule, providing that "when two or more clients consult or retain an attorney on particular matters of common interest . . . the communications between each of them and the attorney are privileged as against third parties." Cavallaro v. United States, 284 F.3d 236, 249 (1st Cir. 2002) (quotations, citations, and brackets omitted). The doctrine is codified in New Hampshire Rule of Evidence 502(b)(3), which provides that the privilege extends to communications "by the client or the client's representative or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein." N.H. R. Ev. 502(b)(3). The language of the rule unambiguously provides that it applies when: (1) there was an action pending at the time the communications were made; and (2) the communications pertained to a matter of common interest. Id.

[¶21] No party challenges the trial court's conclusion that litigation was "pending" as of June 27, 2019, the date Atlantic/NAPA-NH provided written notice to WDH that it intended to enforce the physicians' restrictive covenants. We therefore assume, without deciding, that litigation was pending as of that date. Arguing that the common interest doctrine protected earlier communications, the physician defendants ask us to rule that the pendency of litigation is not a requirement for the common interest doctrine to apply. They acknowledge that the applicable rule "frames the common interest [doctrine] as

8

applying in the context of pending litigation," but they argue that the "common interest privilege should not be confined to pending litigation or even communications in anticipation of litigation." The physician defendants and WDH rely on federal and state case law to support their argument that the common interest doctrine should apply whenever a communication is made to facilitate the provision of legal services to each of the clients involved, whether or not litigation is pending. See, e.g., United States v. BDO Seidman, LLP, 492 F.3d 806, 816 (7th Cir. 2007); Hanover Ins. v. Rapo & Jepsen Ins. Services, 870 N.E.2d 1105, 1109-12 (Mass. 2007). Because we interpret Rule 502(b)(3) by its plain language, the reasoning of these cases is inapplicable here.

[¶22] WDH also argues that "[l]imiting the common interest privilege to situations where litigation is anticipated or pending would upset the reliance on the privilege by parties with common interests in many other common scenarios." The physician defendants assert that even if "pending or reasonably anticipated litigation is necessary for the common interest privilege to attach, the trial court erred when it concluded that litigation was not reasonably anticipated" until June 27, 2019. (Capitalization and bolding omitted.) They argue that because the physicians and WDH shared an intent for the providers to become WDH employees, "despite the potential obstacles from [Atlantic/NAPA-NH's] contractual relationships with both," litigation could be "reasonably anticipated" as of May 2, 2019, when the physician defendants and WDH entered into the common interest agreement. (Quotations omitted). Given the plain language of the rule that requires litigation to be "pending," we are unpersuaded by these arguments. See Paul, 176 N.H. at 265. We disagree that the common interest privilege should be interpreted broadly, and affirm the trial court's decision limiting the application of the common interest doctrine.

### 2. The Crime-Fraud Exception (Questions 1, 2, 3)

[¶23] The crime-fraud exception to the attorney-client privilege, set forth in New Hampshire Rule of Evidence 502(d)(1), states that there is no privilege under the rule "[i]f the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit in the future what the client knew or reasonably should have known to be a crime or fraud." N.H. R. Ev. 502(d)(1). The party invoking the crime-fraud exception must "present evidence: (1) that the client was engaged in (or was planning) criminal or fraudulent activity when the attorney-client communications took place; and (2) that the communications were intended by the client to facilitate or conceal the criminal or fraudulent activity." In re Grand Jury Proceedings, 417 F.3d 18, 22 (1st Cir. 2005) (quotation, brackets, and emphasis omitted).

[¶24] The crime-fraud exception provides that the attorney-client privilege does not apply to communications made "in aid of the commission or planning of a crime or fraud," and applies to communications "involving future

9

wrong-doing, not to discussions or confessions of past misconduct." N.H. R. Ev. 502 Reporter's Notes. That is, the privilege does not apply when a client "seeks advice to aid him in carrying out an illegal or fraudulent scheme." 1 R. Mosteller et al., McCormick on Evidence § 95, at 668-69 (8th ed. 2020). The United States Supreme Court has explained the rationale for the exception as follows:

> The attorney-client privilege must necessarily protect the confidences of wrongdoers, but the reason for that protection—the centrality of open client and attorney communication to the proper functioning of our adversary system of justice—ceases to operate at a certain point, namely, where the desired advice refers not to prior wrongdoing, but to future wrongdoing. It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the seal of secrecy between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime.

United States v. Zolin, 491 U.S. 554, 562-63 (1989) (quotations, brackets, emphases, and citations omitted).

[¶25] The trial court observed in its October 2020 order that "[m]any courts have taken a broad view of [the crime-fraud] exception," and have "applied it to types of conduct other than strict crimes or frauds." See, e.g., Central Const. Co. v. Home Indem. Co., 794 P.2d 595, 598 (Alaska 1990) (declining to accept the "argument that 'crime or fraud' should be narrowly defined," and holding "that services sought by a client from an attorney in aid of any crime or a bad faith breach of a duty are not protected by the attorney-client privilege"). Other courts, however, have declined to expand the exception. See 1 R. Mosteller et al., McCormick on Evidence § 95, at 674 (noting that while a few courts have expanded the exception to include intentional torts, most have not).

[¶26] One federal district court, discussing proposed Federal Rule of Evidence 503(d)(1), which is materially identical to New Hampshire's Rule 502(d)(1), noted that the drafters of the proposed rule had rejected the view that other wrongs and torts in which some element of planning is involved should be equated with fraud. See Milroy v. Hanson, 902 F. Supp. 1029, 1033 (D. Neb. 1995) ("[T]he exception in Standard 503(d)(1) is . . . narrower . . . in limiting the exception to communications in aid of crime or fraud rather than to communications in aid of crime or tort." (quotation omitted)). The court's reasoning in Milroy is consistent with our approach to rule interpretation. See Paul, 176 N.H. at 265 (noting that, when interpreting a rule of evidence, we look to the plain meaning of the words used). We therefore conclude that the term "fraud" in the rule should be given its ordinary legal meaning, and that the crime-fraud exception does not extend to tortious conduct generally.

10

[¶27] The first transferred question asks whether the "crime-fraud exception to the attorney-client privilege . . . appl[ies] to tort claims for breach of fiduciary duty or tortious interference." An affirmative answer to this question would expand the exception beyond the plain meaning of the word "fraud," and, as the physician defendants argue, would "have a chilling effect on the ability of clients to seek legal advice" and thereby undermine the rule of professional conduct that provides that "a lawyer may discuss the legal consequence of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law." N.H. R. Prof. Conduct 1.2(d). Answering the question in the negative, however, would preclude the application of the exception in cases in which there is a reasonable basis to conclude that the client used the attorney to perpetrate a fraud, simply because a claim of fraud has not been included in the complaint. We therefore decline to answer the transferred question as framed and hold that the critical question in determining whether the crime-fraud exception justifies abrogating the attorney-client privilege is whether the client's aim was to use the attorney to perpetrate a fraud, irrespective of whether the complaint includes an allegation of fraud.

[¶28] The essence of fraud is a fraudulent misrepresentation. See Jay Edwards, Inc. v. Baker, 130 N.H. 41, 46 (1987). To establish common law fraud under New Hampshire law, "a plaintiff must prove that the defendant made a representation with knowledge of its falsity or with conscious indifference to its truth with the intention to cause another to rely upon it." Snierson v. Scruton, 145 N.H. 73, 77 (2000). In addition, the plaintiff must prove that it justifiably relied upon the representation, to its detriment. Id.; Ridlon v. N.H. Bureau of Sec. Regulation, 172 N.H. 417, 426 (2019). Accordingly, the appropriate inquiry is not, as framed by the trial court, whether there was a reasonable basis for believing that the physician defendants breached their fiduciary duties and that WDH tortiously interfered with Atlantic/NAPA-NH's contractual relations and that each used the services of Attorneys Best and Mullholland to accomplish the breach and the tortious interference. Rather, the appropriate inquiry is whether there is a reasonable basis to conclude that the physician defendants and WDH intended to use the services of their attorneys to assist them in making a false representation to Atlantic/NAPA-NH upon which they intended Atlantic/NAPA-NH to rely to its detriment.

[¶29] Atlantic/NAPA-NH has not alleged, nor does the record support, that WDH intended to use Attorney Mulholland's services to assist WDH in making an intentional misrepresentation upon which it intended Atlantic/NAPA-NH to rely. Accordingly, the crime-fraud exception does not apply to the claim of tortious interference with contractual relations at issue here.

11

[¶30] In finding that there was a reasonable basis to conclude that the physician defendants used the attorneys' services to perpetrate a breach of fiduciary duties, the trial court found that the evidence supported the determination that the physician defendants "were using the attorneys' services for what they understood or at least suspected were contrary to their obligations to Atlantic/NAPA-NH." Such a finding, however, is not sufficient to establish that the physician defendants' communications with their attorneys were intended to assist them in making a representation, with knowledge of its falsity or with conscious indifference to its truth, with the intention of having Atlantic/NAPA-NH rely upon it. The trial court found that the May meetings and communications surrounding the May meetings support the conclusion that the physician defendants and WDH had engaged Attorneys Best and Mulholland to facilitate discussions about legal questions of shared interest to them. This finding is also insufficient to support the conclusion that the physician defendants engaged counsel to assist them in perpetrating a fraud by making an intentional misrepresentation, upon which they intended Atlantic/NAPA-NH to rely to its detriment. Rather, it suggests that they engaged legal counsel to navigate a complicated legal landscape. See Medical Laboratory Management v. American Broad., 30 F. Supp. 2d 1182, 1207 (D. Ariz. 1998) (crime-fraud exception did not apply where party sought the advice of counsel to ensure conduct would "conform with the law"), aff'd, 306 F.3d 806 (9th Cir. 2002). As the physician defendants point out, non-compete covenants in physician contracts have been deemed unenforceable since 2016, see RSA 329:31-a (2017), and the lawfulness of the non-competition provisions in the physicians' contracts had not yet been considered by the trial court in this case.

[¶31] Atlantic/NAPA-NH asserts that the physician defendants breached their fiduciary duties and that the trial court found that the physician defendants "engaged Attorney Best for the purpose of keeping Atlantic/NAPA-NH in the dark." We do not read the trial court order to make such a finding. Rather, the trial court found that the physician defendants' failure to inform Atlantic/NAPA-NH that WDH was disinclined to renew the Agreement and that the physician defendants were discussing leaving Atlantic/NAPA-NH's employment "would likely have impacted the negotiations," that Lehrer's failure to disclose information adverse to Atlantic/NAPA-NH's interests was "likely" a breach of fiduciary duty, and that the attorneys were present at meetings in which this allegedly tortious conduct was discussed. Even if we assume, without deciding, that the physician defendants' failure to disclose this information to Atlantic/NAPA-NH was a misrepresentation by omission, Atlantic/NAPA-NH does not argue, nor does the record support the conclusion, that it was a misrepresentation upon which the physician defendants intended Atlantic/NAPA-NH to rely to its detriment. Accordingly, we conclude that Atlantic/NAPA-NH did not carry its burden to show that the crime-fraud exception applies to the claims of breach of fiduciary duty and tortious

12

interference with contractual relations at issue here.  See F.D.I.C., 202 F.3d at 460.

### 3. Disclosure of physician defendants' attorney-client communications under a theory of necessity (Question 6)

[¶32] In its April 18, 2023 order, the trial court ruled that certain communications between the physician defendants and Attorney Best were "presumably legitimate" and therefore not subject to disclosure pursuant to the crime-fraud exception.  Atlantic/NAPA-NH moved for reconsideration, arguing that certain language from email communications between Attorney Best and at least one of the physician defendants was not privileged.  The email communications relate facts about discussions between the physician defendants, other Atlantic/NAPA-NH employees, and/or WDH relating to Atlantic/NAPA-NH's solicitation and breach of fiduciary duty claims.  Atlantic/NAPA-NH argued in its motion to reconsider that the quoted language in the emails is the physician defendants' best "contemporaneous recollection of unprivileged facts," and that the trial court had given the language "great weight in determining that the crime-fraud exception applied."  Atlantic/NAPA-NH also noted that the physician defendants had moved for summary judgment on the basis that no evidence showed that they had solicited their colleagues.

[¶33] The trial court construed Atlantic/NAPA-NH's argument that the language in the emails at issue is the "best contemporaneous recitations of the facts of which the clinicians showed they had little recollection" as an argument that Atlantic/NAPA-NH had an "essential need" for disclosure.  It noted our statement that the attorney-client privilege "may not be absolute when there is a compelling need for the information and no alternative source is available."  McGranahan v. Dahar, 119 N.H. 758, 764 (1979).  The trial court then relied on case law that had developed in the psychotherapist-patient privilege context, in which we held that the psychotherapist-patient privilege may be pierced upon a finding of "essential need."  See Desclos v. S. N.H. Med. Ctr., 153 N.H. 607, 615-19 (2006).  Applying the Desclos analytical framework, the trial court ruled that Atlantic/NAPA-NH had an "essential need" for certain language set forth in the emails.

[¶34] The trial court correctly observed that we stated in McGranahan that the attorney-client privilege may not be absolute when there is a "compelling need" for the information.  McGranahan, 119 N.H. at 764.  However, we found no "compelling need" in McGranahan.  Id.  Nor have we found a compelling need that justified piercing the attorney-client privilege in any subsequent case.  Here, the trial court applied case law that had developed in the medical records context to determine that the information was material and relevant and unavailable from another source, and that there was a

13

compelling justification for the information's disclosure.  See Desclos, 153 N.H. at 615-18.  Regarding compelling justification, the trial court ruled that a showing that a party in a civil case would be deprived of a fair trial were it denied access to attorney-client privileged information presents a sufficiently important public interest to qualify as a compelling justification to pierce the privilege.  Cf. id. at 618 (establishing standard to justify piercing psychotherapist-patient privilege).  In ruling as it did, the trial court decided questions of first impression without the benefit of legal argument from the parties.  On appeal, the physician defendants argued in their opening brief that the trial court erred as a procedural matter when it considered Atlantic/NAPA-NH's argument that portions of the emails should be disclosed, and that the trial court erred when it ruled that Atlantic/NAPA-NH had met the "compelling need test." (Quotation omitted).  It was not until they filed their reply brief that the physician defendants argued that the Desclos test is "ill-suited to analyzing an essential need for attorney-client communications." (Quotation omitted).  Atlantic/NAPA-NH did not request permission to file a response to the physician defendants' reply brief.  See Sup. Ct. R. 16(7).

[¶35] Because the legal issues have not been fully briefed in either the trial court or this court, we decline to decide whether the trial court erred when it ruled that certain quoted language in the emails would not remain shielded by the attorney-client privilege.  Instead, we vacate the trial court's ruling and remand so that these issues can be fully litigated, in the first instance, in the trial court.

B. Attorney Depositions – Superior Court Rule 36(d)(5)(i)

[¶36] In November 2022, Atlantic/NAPA-NH requested that the trial court compel the depositions of Attorneys Best and Mulholland.  Atlantic/NAPA-NH asserted that the attorneys led the discussions during the May 6 and May 20, 2019 meetings between WDH and the Atlantic providers, and are important fact witnesses regarding what occurred during the meetings and the communications regarding the "terms of and process by which the Atlantic providers would become employees of WDH."  The physician defendants objected on the grounds that: (1) the request to depose Attorney Best was untimely under the court's rules; (2) Atlantic/NAPA-NH had failed to demonstrate that no other means exist to obtain the information than to depose opposing counsel; and (3) there had been no showing that the information sought is not privileged.  WDH objected to the motion on the same grounds.  In its April 18, 2023 order, the trial court granted the motion in part, and ordered Attorneys Best and Mulholland to sit for depositions.

[¶37] In ruling on Atlantic/NAPA-NH's motion, the trial court applied the test set forth in Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986).  Under that test, a party's attorney should not be ordered to sit for a deposition except when the party seeking the deposition "has shown that (1) no

other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." Shelton, 805 F.2d at 1327 (citation omitted).

[¶38] Applying the Shelton test, the trial court found that the information sought was relevant and nonprivileged because the crime-fraud exception vitiates the privilege up until November 4, 2019, that Atlantic/NAPA-NH's claims involved allegations that the physician defendants and WDH colluded in order to get around the restrictive covenants, that information about what the two attorneys discussed about WDH hiring the providers was very likely crucial to Atlantic/NAPA-NH's claims, and that Atlantic/NAPA-NH has no other means to obtain the information discussed between the attorneys except by deposing them. After so finding, the trial court ordered Attorneys Best and Mulholland to sit for depositions, but limited the scope "to conversations they had with each other not in the presence of other witnesses who have been or will be deposed and that relate to the alleged breaches of fiduciary duties and tortious interference."

[¶39] As we read the order, the trial court relied upon its ruling that the crime-fraud exception applies when it concluded that the information Atlantic/NAPA-NH seeks from Attorneys Best and Mulholland is not shielded by attorney-client and/or work product privilege. In light of our holding today that the crime-fraud exception does not apply, we vacate the trial court ruling and remand the issue for further proceedings consistent with this opinion, and therefore do not reach transferred question 5.

[¶40] For the foregoing reasons, we hold that the common interest doctrine did not apply until June 27, 2019 and that the crime-fraud exception does not apply to the claims of breach of fiduciary duty and tortious interference with contractual relations at issue here. We vacate the trial court's ruling that Atlantic/NAPA-NH may depose Attorneys Best and Mulholland. We also vacate the trial court's ruling that "compelling need" requires the disclosure of certain language in the email communications between Attorney Best and the physician defendants so that this issue can be fully litigated in the trial court.

Affirmed in part; reversed in part; vacated in part; and remanded.

DONOVAN, J., concurred; ABRAMSON, J., retired superior court justice, specially assigned under RSA 490:3, II, concurred.

15